# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| IAN J. JACKSON, ET AL. | * | CIVIL ACTION NO.  11-0524 |
| VERSUS | * | JUDGE DONALD E. WALTER |
| LOUISIANA TECH UNIVERSITY, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the district court, are several motions to dismiss; they include, 1) a motion to dismiss for failure to state a claim upon which relief can be granted, Federal Rule of Civil Procedure 12(b)(6), [doc. # 6], filed by defendants Ruston City Prosecutor W. Kyle Green and the City of Ruston; 2) a motion to dismiss for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted, Federal Rule of Civil Procedure 12(b)(1) and/or (6), [doc. # 7], filed by defendant Danny W. Tatum, Ruston City Court Judge; 3) a motion to dismiss for failure to state a claim upon which relief can be granted, Federal Rule of Civil Procedure 12(b)(6), [doc. # 8], filed by defendant Judge Danny W. Tatum, on behalf of defendant the Ruston City Court; 4)  a motion to dismiss for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted, Federal Rule of Civil Procedure 12(b)(1) and/or (6), [doc. # 9], filed by defendants Wanda Neeles, Brenda Gafton, and Linda Hanes; and 5) a motion to dismiss for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted, Federal Rule of Civil Procedure 12(b)(1) and/or (6), [doc. # 29], filed by defendants Louisiana Tech

University, Louisiana Tech University Police Department, Louisiana Tech Chief of Police Randal Hermes, Louisiana Tech Assistant Chief of Police Bill Davis, and Louisiana Tech Police Officers Randy Gay and Tim Holstead.  For reasons assigned below, it is recommended that the motions be GRANTED or GRANTED IN PART, and that the complaint be dismissed in its entirety.

## **Background**

On the night of April 3, 2010, Louisiana Tech University police officer, Corporal Tim Holstead ("Holstead"), received a call from his wife advising him that, while traveling on Interstate 20, three motorcycles passed her like she was standing still.  *See* Compl., ¶¶ 6-8. Holstead then drove outside of his jurisdiction to the Tech Drive overpass at I-20, where he observed the three motorcycles exit I-20.  *Id.*, ¶¶ 7-8, 10.  Holstead then followed the motorcycles through the Louisiana Tech University campus, in an effort to obtain probable cause to stop them.  *Id.*, at ¶¶ 12, 15, 21-22.  Holstead eventually observed one motorcycle (later determined to be driven by Ian J. Jackson), accelerate at, what he perceived to be, an extremely high and unsafe rate of speed.  *Id.*, at ¶ 21.  Accordingly, Holstead initiated a traffic stop, and ultimately issued Jackson a citation for careless driving.  *Id.*, at ¶37(b).

On May 12, 2010, Jackson appeared in Ruston City Court to respond to the careless driving charge.  *See* Compl., ¶¶ 51-52, 79(a)(1).  He was arraigned before the Honorable Danny Tatum, with W. Kyle Green serving as city court prosecutor.  *Id.*, ¶¶ 51-52, 54, 79(a)(1).  On or about May 15, 2010, Jackson filed a Motion to Inspect, Examine and/or Copy Documents and Tangible Objects (Motion to Discover), which was set to be heard on May 19, 2010.  *Id.*, at ¶ 55(b).  However, the motion was not heard on May 19, as scheduled.  *Id.*  Plaintiff further alleges

2

that on June 1, 2010, he filed a "Motion for Judgment on Motion filed of Record," and a "Supplementary Discovery Motion," plus, "RESUBMITTED" versions of each.  *Id*., at ¶56(a).

On June 15, 2010, – the date that Jackson's case was originally set for trial – Judge Tatum advised Jackson that his trial would not proceed as scheduled, but that instead, the court would take up Jackson's pending Motion to Inspect, etc.  *Id*., at ¶ 57.[1]  At the June 15 hearing, Judge Tatum advised Jackson that the court had received a letter from Louisiana Tech University Police Chief Randal Hermes stating that the tape recordings requested by Mr. Jackson did not exist.  *See id.*, at ¶¶57(a), (b), 60(a).  Judge Tatum asked Mr. Green to read the letter from Chief Hermes aloud, and confirmed that plaintiff had received a copy of that letter.  *Id*., at ¶¶57(c)-(g).  Jackson then explained to Judge Tatum his reasons why he believed that such a recording(s) existed.  *Id*., at ¶¶57(h)-(j).  Judge Tatum then *sua sponte* directed the bailiff to advise Chief Hermes that his testimony was needed in court.  *Id*., at ¶¶ 58-59.

According to Jackson, Chief Hermes then falsely testified at the hearing that the Louisiana Tech University Police Department did not have any recordings related to the traffic stop at issue.  *Id*., at ¶ 64.  Jackson further alleges that Judge Tatum and W. Kyle Green unlawfully refused to grant Jackson's request to have Louisiana Tech University Police Officers, Tim Holstead and Randy Gay, appear as witnesses.  *Id*., at ¶ 61.

On June 29, 2010, Jackson filed with the Ruston City Court:  1) a Notice of Insufficient Discovery; 2) a Request for Article 729.5 Sanctions; and 3) a Motion for Rendition of Judgment on Supplementary Motion.  (Compl., ¶65).  Plaintiff contends, however, that defendants refused

---

[1]  Jackson contends that the court unlawfully took up his motion, without providing him the requisite advance notice.  *Id*.

to set his motions for hearing.  *Id*.  Instead, Judge Tatum took up Jackson's pending motions on July 22, 2010, at the commencement of Jackson's re-scheduled trial.  *Id*., at ¶66.  Plaintiff further alleges that he was not prepared to address his pending motions at that time, and that Judge Tatum denied Jackson's joint pleading, including Jackson's request to call Judge Tatum as a witness.  *Id*., at ¶¶ 66, 79(a)(4).  Jackson then moved for a change of venue, which the court summarily denied.  *Id*., at ¶66.  The court then proceeded with the trial, over Jackson's objection. *Id*., at ¶ 67.  After an adjournment, the trial concluded on August 4, 2010, despite the court's failure to decide Jackson's outstanding discovery motion(s).  *Id*., at ¶¶ 68-73.

Apparently the court the court adjudged Jackson guilty as charged, because Jackson alleges that while preparing his appeal on November 12, 2010, he discovered that the transcripts of the proceedings had been altered or manipulated such as to render them useless for purposes of his appeal.  (Compl., ¶¶ 75-79).  Jackson attributed these alterations to the court reporter, Linda F. Hanes; the Ruston City Court Clerk of Court, Wanda Neeles; and/or Deputy Clerk of Court, Brenda Grafton.  *Id*.

On April 1, 2011, plaintiff Ian J. Jackson filed the instant pro se civil rights complaint pursuant to 42 U.S.C. § 1983 against virtually anyone involved with the April 3, 2010, traffic stop and the resulting prosecution for the traffic citation.  Named defendants include Ruston City Court Prosecutor Kyle Green; the City of Ruston; Ruston City Court Judge, Danny W. Tatum; the Ruston City Court; Ruston City Court Clerk of Court Wanda Neeles; Ruston City Court Deputy Clerk Brenda Gafton; Court Reporter Linda Hanes; Louisiana Tech University; the Louisiana Tech University Police Department; Chief of Police Randal Hermes; Assistant Chief of Police Bill Davis; Officer Randy Gay; and Officer Tim Holstead.  Plaintiff contends that

4

defendants violated his rights under the United States and Louisiana Constitutions, as well as various state laws.  He sued each defendant in their individual and official capacities.  Plaintiff seeks monetary damages against each defendant, ranging from a low of $1,500,000 to a high of $250,000,000.

On June 6, 2011, defendants Kyle Green, City of Ruston, the Honorable Danny W. Tatum, Ruston City Court, Wanda Neeles, Brenda Gafton, and Linda Hanes (collectively, "the City of Ruston defendants"), each joined in one of four motions to dismiss for lack of subject matter jurisdiction and/or for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), respectively.  *See* doc. #s 6, 7, 8, & 9.  On July 18, 2011, defendants Louisiana Tech University, Louisiana Tech University Police Department, Chief of Police Randal Hermes, Assistant Chief Bill Davis, and Officers Randy Gay and Tim Holstead (collectively "the Louisiana Tech defendants"), filed the instant motion to dismiss [doc. # 29] for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(1) and (6).  The motions are opposed.  By separate order, the court has permitted plaintiff to supplement his opposition to include, *inter alia*, transcripts of the city court proceedings.  The matter is now before the court.

## Discussion

I.     **Standards of Review**

   a)     **Subject Matter Jurisdiction**

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers local 6*

*Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)).  The party seeking to invoke jurisdiction

bears the burden of demonstrating its existence.  *See Ramming v. United States*, 281 F.3d 158,

161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  "[T]here is a

presumption against subject matter jurisdiction that must be rebutted by the party bringing an

action to federal court."  *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted).

"Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms:

'facial attacks' and 'factual attacks.'"  *Garcia v. Copenhaver, Bell & Assics., M.D.'s, P.A.*, 104

F.3d 1256, 1260-1 (11th Cir. 1997) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-9 (11th

Cir. 1990); *see Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).  Facial attacks on the

complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis

of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for purposes

of the motion."  *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

### b)      Failure to State a Claim Upon Which Relief Can Be Granted and 42 U.S.C. § 1983

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state

a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for

relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is

entitled to relief . . ."  Fed.R.Civ.P. 8(a)(2).   To withstand a motion to dismiss, "a complaint

must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible

on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)).  A claim is facially plausible when it

contains sufficient factual content for the court "to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th Cir. 2010).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

"To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir. 1994). Moreover, in order to plead a § 1983 cause of action, a plaintiff "must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin*

*County*, 535 F.3d 365, 373 (5th Cir. 2008).  Thus, a successful § 1983 claim "must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged."  *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).  However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Id*.  Additional documents also are considered "part of the pleadings," if plaintiff refers to them in his complaint, and they are central to his claim.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (citations omitted).

## II.     The City Court Defendants

### a)     Danny W. Tatum, Ruston City Court Judge

Judge Tatum seeks dismissal on the grounds that 1) the *Rooker-Feldman* doctrine precludes the exercise of subject matter jurisdiction; 2) plaintiff's claims are barred by *Heck v. Humphrey*; and/or 3) the judge is entitled to absolute judicial immunity.  Finding that Judge Tatum is entitled to absolute judicial immunity for claims against him in his individual capacity,[2] the court pretermits consideration of defendant's alternative arguments.

#### I)     Judge Tatum is Entitled to Judicial Immunity as to Plaintiff's Claims Against him in his Individual Capacity

It is well settled that "[j]udicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial discretion."  *Boyd v.*

---

[2]  *See Luna v. Kliebert*, 368 Fed. Appx. 500, 502, 2010 WL 678087, 1 (5th Cir. Feb. 26, 2010) (unpubl.) (discussing absolute immunity for judges in their individual capacities).

8

*Biggers*, 31 F.3d 279, 284 (5th Cir.1994); *see also Krueger v. Reimer*, 66 F.3d 75, 76-77 (5th Cir.1995) (*per curiam*); *Graves v. Hampton*, 1 F.3d 315, 317 (5th Cir.1993), abrogated on other grounds by *Arvie v. Broussard*, 42 F.3d 249 (5th Cir.1994). "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359, 98 S.Ct. 1099, 1106 (1978); *Brandley v. Keeshan*, 64 F.3d 196, 200-201 (5th Cir.1995), *cert. denied*, 516 U.S. 1129 (1996).  Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286 (1991).  "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Id.* at 10, 112 S.Ct. 286 (citation omitted).

Judicial immunity is a matter of policy and is necessary because, as aptly demonstrated by the case *sub judice*, a judge  ". . . should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption [and] [i]mposing such a burden on judges would contribute not to principled and fearless decision making but to intimidation." *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967).  Consequently, judicial immunity cannot be overcome even by allegations of bad faith or malice; such immunity "applies even when the judge is accused of acting maliciously and corruptly." *Id.* at 11, 112 S.Ct. 286 (internal quotation marks and citation omitted).  Indeed, judicial immunity applies even if the judge's challenged actions deprived a criminal defendant of due process.  *See Price v. Porter*, 351 Fed. Appx. 925 (5th Cir. Nov. 2, 2009) (unpubl.) (citing supporting cases).  In determining

whether a judge is entitled to immunity, "[i]t is the Judge's actions alone, not intent, that we must consider." *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir.1993).

Judicial immunity can only be defeated by showing that the judge's actions were of a non-judicial nature or that he acted in the complete absence of jurisdiction. *Mireles*, 502 U.S. at 11-12, 112 S.Ct. at 288. Courts use the "functional" approach in deciding whether an act is judicial for purposes of immunity. *Cleavinger v. Saxner*, 474 U.S. 193, 201-02, 106 S.Ct. 496 (1985). The issue of "immunity analysis rests on the status of the defendant. Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official." *Id.* In deciding whether absolute judicial immunity applies, a court should consider the nature of the act taken, namely whether it is a function normally performed by a judge, and the expectations of the parties, namely whether they dealt with the judge in his judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099 (1978).

In determining whether the complained of actions were non-judicial in nature, that is to say, whether the judge acted outside the scope of his judicial capacity, the court should consider a variety of factors: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *Malina*, 994 F.2d at 1124 (citation omitted). These factors must be broadly construed in favor of immunity. *Id.* An official who invokes the affirmative defense of absolute immunity bears the burden of proving that the conduct at issue served a prosecutorial function. *Burns v. Reed*, 500 U.S. 478,

486, 111 S.Ct. 1934 (1991) (citations omitted).

Plaintiff herein makes numerous allegations against Judge Tatum.  He alleges, for instance, that Judge Tatum:

    1)      denied his motion for change of venue;

    2)      failed to set or hear his various motions;

    3)      entertained plaintiff's motions when plaintiff was not ready to argue them;

    4)      proceeded to trial over plaintiff's objection;

    5)      informed Chief of Police Hermes that he was needed in court to testify;

    6)      acted as both prosecutor and judge;

    7)      denied his request for witnesses;

    8)      denied plaintiff's request to call the judge as a witness; and

    9)      proceeded to trial while "unadjudicated" pleadings  were pending.

*See* Compl.[3]

The foregoing allegations, however, challenge Judge Tatum's handling of the trial and pretrial hearings, which are normal judicial functions.  Indeed, the judge enjoys authority to control and conduct proceedings in an orderly and expeditious manner.  La. C.C.P. Art. 1631. Insofar as plaintiff contends that Judge Tatum usurped the role of the prosecutor, it is manifest that a judge has wide discretion to facilitate proceedings.  *See La Pierre v. Gibson*, 420 So.2d 990, 993 (La. App. 4th Cir. 1982) (interest of judicial economy supported judge's practice of questioning witnesses); *Briscoe v. Briscoe*, 641 So.2d 999 (La. App. 2d Cir. 1994) (no error where judge said that he was placing the case in "rawhide mode," and that if opposing counsel

---

    [3]  While this may not be an exhaustive list of plaintiff's grievances against Judge Tatum, it suffices to capture the substance and nature of his allegations.

did not object to cross-examination questions, the judge would object).  Furthermore, a judge does not lose immunity because his actions were in error or exceeded his authority.  *See Mireles supra* (judge entitled to immunity when he ordered police officers to bring an attorney before the judge).

The court further observes that all of the challenged actions by Judge Tatum occurred in the courtroom or adjunct spaces; the controversy centered around a case pending before Judge Tatum; and the acts arose out of a visit to the judge in his official capacity.  *See Malina, supra*. Broadly construing the relevant factors, the undersigned readily concludes that Judge Tatum is entitled to judicial immunity.  *See Hosseini v. Sharp*, 216 Fed. Appx. 392 (5th Cir. Oct. 24, 2006) (judge did not lose immunity by discussing proceedings with litigant in chambers); *Tatum v. Giarruso*, 347 F. Supp. 2d 324 (E. D. La. 2004) (judge entitled to immunity where all four factors pointed to conclusion that she was acting in her judicial capacity).

Plaintiff also seems to argue that Judge Tatum is not entitled to immunity because he acted in "clear absence of all jurisdiction."  *Stump v. Sparkman*, 435 U.S. 349, 356-7, 98 S.Ct. 1099, 1105 (1978).  He argues that the Louisiana Constitution does not permit anyone but the district attorney or his designated assistant to prosecute a defendant in city court for the violation of a state statute not punishable at hard labor.  *City of Baton Rouge v. Malik*, 404 So.2d 883 (La. 1983).

While *Malik* provides Jackson with an argument to reverse his conviction on appeal to the Louisiana Second Circuit, it does not compel a finding that Judge Tatum acted in "clear absence of all jurisdiction."  To the contrary, state law unequivocally confers jurisdiction upon city courts to adjudicate state law offenses that are committed within their jurisdictions, and

12

which are not punishable by imprisonment at hard labor.  La. R.S. 13:1894; *State v. Ryan*, 446

So.2d 554, 555-6 (La. App. 3d Cir. 1984) (city court had subject matter jurisdiction over state

law criminal offense).  Consequently, Judge Tatum enjoyed at least "some" basis for subject

matter jurisdiction, which is all that is needed to retain judicial immunity.  *See Malina, supra*; *see*

*also Kastner v. Lawrence*, 390 Fed. Appx. 311, *2 (5th Cir. July 23, 2010) (unpubl.) (judge

entitled to absolute immunity, despite his failure to follow certain procedures).  In addition, the

"absence of jurisdiction" exception refers to situations where the judge acted purely in a private

and non-judicial capacity.  *Henzel v. Gerstein*, 608 F.2d 654, 658 (5th Cir. 1979) (citation

omitted).  Clearly, those circumstances are not present here.

### ii)  Plaintiff's Official Capacity Claims Against Judge Tatum are Subject to Dismissal Pursuant to the Eleventh Amendment or for Failure to State a Claim upon Which Relief Can Be Granted[4]

Insofar as plaintiff sued Judge Tatum in his official capacity, it is manifest that official

capacity suits, "generally represent only another way of pleading an action against an entity of

which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105

(1985) (citing, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98

S.Ct. 2018, 2035, n. 55 (1978)).  Thus, "an official-capacity suit is, in all respects other than

name, to be treated as a suit against the entity."  *Id*.

---

[4]  To the extent that Judge Tatum's motion did not urge these particular grounds to support dismissal, plaintiff was not prejudiced by the lack of notice because other defendants raised similar arguments in their motions to dismiss.  In any event, the court always possesses the inherent authority to dismiss an action *sua sponte*, without motion by a defendant.  *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 66 F.3d 322, 1995 WL 534901, at *2 (5th Cir. 1995) (unpubl.).  Moreover, a report and recommendation, itself, provides sufficient notice to the parties.  *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (citing *Magourik v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)).

Louisiana law, however, is not entirely clear regarding which entity a municipal judge acts on behalf of.  There is authority to support the proposition that the position of city court judge is an office of the State of Louisiana.  *City of Baton Rouge v. DeFrances*, 429 So.2d 470, 475 (La. App. 1ˢᵗ Cir. 1983) (*citing, inter alia, Cosenza v. Aetna Insurance Company*, 341 So.2d 1304 (La. App. 3d Cir.1977)).  As such, plaintiff's official capacity claim against Judge Tatum is barred by the Eleventh Amendment.  *See* discussion, *infra*.  On the other hand, state law dictates that municipalities are responsible for paying the city court judges.  La. R.S. 13:1874.  Thus, to the extent that Judge Tatum is an agent of the City of Ruston, plaintiff nonetheless has failed to state a claim against him in his official capacity because he not demonstrated that he suffered a federal constitutional deprivation caused by a policy or custom of the entity.  *See* discussion, *infra*.  Moreover, the Fifth Circuit has repeatedly held that a municipal judge is not a municipal official or policymaker.  *See Cunningham ex rel. Cunningham v. City of West Point Miss.*, 380 Fed. Appx. 419, 421, (5ᵗʰ Cir. June 7, 2010) (unpubl.) (and cases cited therein).

**b)     Kyle W. Green, City Court Prosecutor**

Kyle Green seeks dismissal of plaintiff's claims on the basis that he is entitled to absolute prosecutorial immunity.  As with judges, however, the absolute immunity accorded to prosecutors applies solely to claims brought against them in their individual capacities.  *Brooks v. George County, Miss.*, 84 F.3d 157, 168 (5ᵗʰ Cir. 1996).  Accordingly, the court again segregates its analysis between plaintiff's individual and official capacity claims.

**I)     Kyle Green is Absolutely Immune from Plaintiff's Claims Against Him in His Individual Capacity**

"Prosecutors are absolutely immune from § 1983 suits in their individual capacities for

14

actions that are within the scope of their prosecutorial duties." *Quinn v. Roach*, 326 Fed. Appx. 280, *9 (5th Cir. May 4, 2009) (unpubl.); *see also  Kalina v. Fletcher*, 522 U.S. 118, 129, 118 S.Ct. 502 (1997); *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S.Ct. 984 (1976).  Prosecutorial immunity applies to a prosecutor's actions in initiating, investigating, and pursuing a criminal prosecution. *Id*. (citations omitted).  "A prosecutor's absolute immunity will not be stripped because of action that was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Harrell v. Rosenthal*, 2008 WL 4649067 (5th Cir. Oct. 21, 2008) (unpubl.) (citation omitted).  For purposes of immunity, the presence or absence of jurisdiction is determined by whether the challenged activity falls within the category of conduct that a prosecutor generally engages. *Cousin v. Small*, 325 F.3d 627, 635-6 (5th Cir. 2003) (citation omitted).  Thus, the inquiry becomes whether the challenged conduct occurred in the prosecutor's exercise of the advocatory function. *Id*.

Plaintiff's allegations against Green may be summarized, as follows,

1.    On May 12, 2010, Mr. Green, and other defendants, "unlawfully and unconstitutionally started and instituted criminal proceedings" against plaintiff in violation of plaintiff's right to equal protection under the 14th Amendment, his 1st Amendment right to free speech and expression and his 6th Amendment "rights to a fair trial and/or hearings before and {sic} tribunal;" (Compl., ¶52);

2.    Defendants "unlawfully, illegally and unconstitutional[ly]" used an improper caption for the proceeding which deprived plaintiff of his 6th Amendment right to a fair and impartial hearing and trial before an impartial court of proper jurisdiction; *Id*. at ¶ 53;

3.    Defendants turned the prosecution over to appointed City Attorney

15

W. Kyle Green who, in violation of the Louisiana State Constitution, sat "in the Prosecuting Attorney's seat the entire case", as opposed to having the District Attorney handle the matter; *Id*. at ¶¶54(a)-(c);

4.      Defendants "unlawfully and illegally rendered a ruling" on Mr. Jackson's Motion to Change Venue without Mr. Green having to object;
        *Id*. at ¶54(e);

5.      On May 19, 2010, Mr. Green, and others, "did unlawfully, illegally and intentionally with malice" keep plaintiff from confronting and examining defendants Tim Holstead and Randy Gay by defendants' refusal to "entertain and adjudicate" plaintiff's Motion to Inspect in violation of his 6th Amendment "right to the access and use of the compulsory process," and his 14th Amendment rights to due process and equal protection;
        *Id*. at ¶55;

6.      On or about June 8, 2010, defendants "maliciously, unlawfully, illegally and intentionally failed and refused to set" for hearing plaintiff's resubmitted Motion to Inspect, as well as other motions, in violation of his rights to due process and equal protection
        *Id*., at ¶56;

7.      On June 15, 2010, Mr. Green, and others, advised Mr. Jackson, without sufficient advanced notice, that the trial of the careless driving citation would not take place that date but that the Court would address Mr. Jackson's pending Motion to Inspect;
        *Id*., at ¶57;

8.      On that same date, after the Court asked the bailiff to contact Chief Hermes and advise him that he was needed in court to testify, Mr. Green did not comment "as [Judge Tatum] and the Ruston City Court prosecuted" the case, and Mr. Green did not request any witnesses to appear;
        *Id*. at ¶¶ 58-59;

9.      When the Court advised that it would address plaintiff's Motion to Inspect, Mr. Green "gave no input," and, when Mr. Jackson asked that LTU Officers Holstead and Gay appear to testify, Mr. Green "biasously {sic} intentionally, and unlawfully failed and refused to honor, fulfill or grant [Mr. Jackson's] oral request," made four

times over, resulting in Mr. Jackson's being denied use of
compulsory process and being barred from confronting and
examining the officers who issued the citation, in violation of the
6th Amendment;
*Id*. at ¶61;

10.    Defendants' refusal to grant Mr. Jackson's oral requests for the
officers to appear in court violated Louisiana Code of Criminal
Procedure articles 702, 731 and 737;
*Id*., at ¶62;

11.    On June 15, 2010, defendants allowed Chief Hermes to commit
perjury without imposing any sanctions, and "biasously {sic} and
partially sought to have that criminal matter record appear that a
court order had been and/or was issued toward and upon herein
defendants, LTU, LTUPD, Chief Randal Hermes and et al, which
would have and should have compelled said defendants to submit
to Plaintiff Ian J. Jackson sought after discovery and inspection;"
*Id*. at ¶¶63-64;

12.    On June 29, 2010, Mr. Green, and others, "unlawfully, unethically
and intentionally" "refused to set and fix" Mr. Jackson's pending
motions in violation of the City Court's local rules, which deprived
plaintiff of his right to due process and right of access to the courts
under La. Const. art. I, §22;
*Id*., at ¶65;

13.    On July 22, 2010, the second set trial date, Mr. Green, and others,
"biasous l y {sic}, unlawfully and improperly sought to entertain"
Mr. Jackson's pending motions, without having given Mr. Jackson
sufficient advance notice that such motions would be addressed,
and despite Mr. Jackson's assertion that he "was not ready and had
not prepared for a hearing" on those motions;
*Id*. at ¶66(1));

14.    Defendants' "failure to set and fix" plaintiff's pending
Supplementary Discovery Motion, filed on June 1, 2010, and
resubmitted on June 8, 2010, prevented plaintiff's access to the
court, and caused plaintiff to be deprived of due process, equal
protection and "a fair and impartial trial before an impartial court;"
*Id*., at ¶¶68-69, 73; and

15.    As a result of defendants' "failures and refusals to perform set and

17

> established, as well as sworn to obligations and responsibilities,"
> plaintiff was deprived of due process and equal protection under
> the 14th Amendment and of a fair and impartial trial and hearing
> under the 6th Amendment.
> *Id*., at ¶74.

It is manifest that the foregoing allegations against Green fall within the scope of his conduct as a prosecutor, and thus are barred by absolute immunity. *See e.g., Burns, supra* (absolute immunity for prosecutor's actions at probable cause hearing); *Imbler, supra* (absolute immunity for initiating prosecution, presenting State's case, and knowingly proffering perjured testimony); *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir.1990) (decision to file or not to file criminal charges is protected by prosecutorial immunity); *Harris v. Dallas County Dist. Attorney's Office*, 1999 WL 800003 (5th Cir. Sept. 14, 1999) (unpubl.) (prosecutor's management and scheduling of state's trial witnesses is subject to absolute immunity). Further, Green cannot be liable for any alleged conspiracy where he otherwise is entitled to absolute immunity for his underlying actions. *Mobray v. Cameron County, Tex.*, 274 F.3d 269, 277 (5th Cir. 2001) (citations omitted).

Plaintiff again cites *Malik* for the proposition that Green acted without jurisdiction, and therefore, cannot invoke absolute immunity. The court reiterates, however, that the jurisdictional inquiry focuses upon whether the challenged activity falls within the type of conduct normally conducted by a prosecutor. *Cousin, supra*. Here, there is no question that plaintiff's allegations against Green are directed towards his actions as a prosecutor. In addition, the "absence of jurisdiction" exception refers to situations where the prosecutor acted in a non-prosecutorial capacity. *See Henzel, supra* (finding that prosecutor was entitled to absolute immunity, despite allegations that he acted without jurisdiction).

18

Even if Green were not entitled to absolute immunity, the court is hard pressed to discern where plaintiff has alleged sufficient facts to state a claim against Green for any violations of the federal constitution.  Most of plaintiff's allegations against Green are for his supposed role in various trial matters that were controlled and decided by Judge Tatum.  The complaint does not contain sufficient factual allegations to demonstrate that Green had any control over these trial management decisions.

Perhaps plaintiff's best argument against Green is that under *City of Baton Rouge v. Malik*, Green was not the proper person to prosecute Jackson.  However, the rule that state law criminal offenses must be prosecuted in city court by the district attorney (or one of his assistants), stems from the Louisiana Constitution, not the U.S. Constitution.  *See Malik, supra*.  Furthermore, a violation of state law does not, "in and of itself," constitute a federal due process violation.  *Ware v. Lafayette City-Parish Consolidated*, 2009 WL 5876275 (W.D. La. Jan. 6, 2009) (*citing inter alia*, *Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256 (1948) ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here [to federal court] as a federal constitutional question.")).

### ii)     Plaintiff's Official Capacity Claims Against Kyle Green are Subject to Dismissal Pursuant to the Eleventh Amendment or for Failure to State a Claim upon Which Relief Can Be Granted

As stated earlier, official capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985) (citing, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55 (1978)).  Thus, "an official-capacity suit is, in all

19

respects other than name, to be treated as a suit against the entity." *Id*.

To the extent that Kyle Green may be considered as acting on behalf of the state, any official capacity claims against him are barred by the Eleventh Amendment. *See* discussion, *infra*. To the extent that Green was an agent of the City of Ruston, plaintiff nonetheless has failed to state a claim against him in his official capacity because he not demonstrated that he suffered a federal constitutional deprivation caused by a policy or custom of the entity. *See* discussion, *infra*. Also, there is no indication that Green was a municipal official, with policy-making authority.[5]

### c) Wanda Neeles, Clerk of Court; Brenda Gafton, Deputy Clerk of Court; and Linda Hanes, Court Reporter

Neeles, Gafton, and Hanes seek dismissal of plaintiff's complaint against them on the grounds that 1) the *Rooker-Feldman* doctrine precludes the exercise of subject matter jurisdiction; 2) plaintiff's claims are barred by *Heck v. Humphrey*; and/or 3) they are entitled to judicial immunity. Addressing the last argument first, the court observes that court clerks enjoy "absolute immunity . . . for damages arising from acts they are specifically required to do under court order or at a judge's discretion." *Burnett v. Denman*, 368 Fed. Appx. 603 (5th Cir. March 8, 2010) (citation and internal quotation marks omitted). For other routine duties, court clerks enjoy qualified immunity. *Id*. Further, "official court reporters are entitled to qualified immunity under § 1983 if they can show that (they were) acting pursuant to (their) lawful authority and following in good faith the instructions or rules of the Court and (were) not in derogation of

---

[5] In a footnote, Green contends that he is entitled to absolute immunity insofar as plaintiff asserts any claims against him under state law. However, this issue was not sufficiently briefed for the court to address it. Moreover, it is not clear what effect *City of Baton Rouge v. Malik* will have on Green's absolute immunity defense under state law.

those instructions or rules." *Rheuark v. Shaw*, 628 F.2d 297, 305 (5ᵗʰ Cir. 1980) (citations and internal quotation marks omitted).

Litigants also do not have a constitutional right to a "totally accurate transcript." *Hampton v. Segura*, 276 Fed. Appx. 413 (5ᵗʰ Cir. April 30, 2008) (unpubl.) (citations omitted).[6] Even if a party can show that a transcript is inaccurate, he still must show that he was materially prejudiced thereby.  *See Hampton, supra; see also*, *Anderson v. County of Hamilton*, 780 F. Supp. 2d 635 (S.D. Ohio 2011) (in the absence of any allegations showing how plaintiff suffered an injury as a result of alleged errors in transcription, plaintiff failed to state a federal claim against the court reporter).  Likewise, to state a federal constitutional claim against a clerk of court for altering the record, plaintiff must allege facts that establish actual prejudice or injury. *See Burnett, supra*.

In the case *sub judice*, plaintiff alleges that the clerks of court:  failed to file his motions or pleadings on June 8 and 11, violated his right to compulsory process, refused to set his motions for hearing, denied him equal protection under the laws, falsely certified the transcripts, selected the court reporter to transcribe the record, and maliciously allowed or permitted the transcripts to be fraudulently altered, changed, and/or manipulated.  (Compl.).  As to the court reporter, plaintiff alleges that she fraudulently altered and/or changed the transcripts.  *Id*.

Jackson alleges that virtually every page of the transcripts of the proceedings in city court were altered and that one of the transcribed hearings did not even occur.  He further alleges that

---

⁶ In *Hampton v. Segura*, the district court remarked that, "district courts . . . should exercise a rather robust screening function to ensure that court reporters performing their jobs to the best of their abilities are not dragged into federal court to defend themselves whenever a dis-satisfied state court litigant wishes to contest the accuracy of a transcript."  *Hampton v. Segura*, 2007 WL 2001640, *4 (N.D. Miss. July 5, 2007).

the parties on the caption of the transcript were changed.  He alleges, however, in no more than conclusory fashion, that the errors prejudiced his appeal.  Stated differently, plaintiff does not identify how any specific error in the transcript undermined the grounds for one, or more of his arguments on appeal.  In fact, there is no indication that the Louisiana Second Circuit has even denied his appeal.

With regard to the clerks of court, there are no factual allegations to establish that they had authority to set his motions.  Furthermore, the selection of a court reporter is a ministerial duty to which they are entitled to qualified immunity.

Plaintiff's most substantial charge against the clerks of court is that, at least for a time,[7] they failed to file his pleadings or motions that he submitted on June 8.  The pleadings that he submitted were a supplementary discovery motion, a motion to inspect and examine, a proposed order requesting the setting of his motions for hearing, and a motion for continuance.  *See* Pl. Opp. Memo., pg. 11.  However, plaintiff further alleges that Judge Tatum took up his motion to inspect, etc. on June 15, and also continued his trial to a later date.  (Compl., pgs. 39-40).  Plaintiff also successfully filed additional motions related to his discovery requests on June 29.  (Compl., pg. 49).  In short, plaintiff has not alleged any cognizable harm or prejudice from the clerks' alleged failure to timely docket his pleadings.

In sum, the undersigned finds that plaintiff fails to state a claim against Wanda Neeles, Brenda Gafton, and Linda Hanes, in their individual capacities.  Furthermore, to the extent that these individuals may be considered agents of the state, they are immune from suit for plaintiff's

---

[7]  Plaintiff alleges that the clerks eventually docketed his motions, but not until after the final ruling in city court.  *See* Pl. Opp. Memo., pg. 11.

claims against them in their official capacity.  *See* discussion, *infra*.  To the extent that they are considered municipal employees, plaintiff has not alleged a policy or custom of the city sufficient to state a claim against them in their official capacity.  *Id*.

**d)      The Ruston City Court is not an Entity Capable of Being Sued**

Subject to several exceptions not applicable here, Rule 17(b) of the Federal Rules of Civil Procedure provides that capacity to sue or be sued is determined "by the law of the state where the court is located . . ."  Fed.R.Civ.P. 17(b)(3).  Under Louisiana law, an *entity* must qualify as a "juridical person" before it may be sued.  *Hunt v. Town of New Llano*, 930 So.2d 251, 254, (La. App. 3d Cir. 2006) (citations omitted).  A "juridical person" is defined by the Louisiana Civil Code as ". . . an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code Art. 24.

In assessing a governmental entity's juridical status, the Louisiana Supreme Court has observed that

> the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit *for the particular purpose at issue*. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.
>
> *Such a determination will depend on an analysis of specifically what the entity is legally empowered to do.*

*Roberts v. Sewerage & Water Bd. of New Orleans*, 634 So. 2d 341, 346-47 (La. 1994) (citations omitted) (emphasis added).

Recently, Judge Hicks determined that the Shreveport City Court is not an entity capable of being sued.  *See Glover v. Hester*, Civil Action No. 09-0978 (W.D. La. March 4, 2010).  In so deciding,

he relied upon the same statutory provisions that enacted and govern the Ruston City Court.  *Id.*

(citing *inter alia*, La. R.S. 13:1952 and 13:1888).  Applying the same rationale here, the

undersigned necessarily concludes that the Ruston City Court is not an entity capable of being

sued, and must be dismissed from the case.

  e)  **The City of Ruston is Not Liable Under § 1983**

  The principles of municipal liability under § 1983 are well known:

> A municipality is not liable under § 1983 on the theory of respondeat superior, but
> instead only for acts that are directly attributable to it "through some official
> action or imprimatur."  To hold a municipality liable under § 1983 for the
> misconduct of an employee, a plaintiff must show, in addition to a constitutional
> violation, that an official policy promulgated by the municipality's policymaker
> was the moving force behind, or actual cause of, the constitutional injury.  The
> official policy itself must be unconstitutional or, if not, must have been adopted
> "with deliberate indifference to the known or obvious fact that such constitutional
> violations would result."

*James v. Harris County*,  577 F.3d 612, 617 (5th Cir. 2009) (internal citations omitted).

Here, plaintiff has not alleged a federal constitutional violation that resulted from an official

policy of the City of Ruston.  Accordingly, his complaint does not state a § 1983 claim against

the City of Ruston.

**III.**  **The Louisiana Tech Defendants**

  a)  **Tim Holstead, Randy Gay, Randal Hermes, and Bill Davis**

  Defendants, Tim Holstead, Randy Gay, Randal Hermes, and Bill Davis contend that they

are entitled to qualified immunity.  "The doctrine of qualified immunity protects government

officials 'from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known.'"

*Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted).  When a

24

defendant invokes qualified immunity, the burden shifts to plaintiff to establish that the defense is inapplicable.  *Id.*  (citation omitted).  Plaintiff's burden is two-pronged.  *Id.*  First, he must demonstrate that the defendant violated a constitutional right under current law.  *Id.*  "Second, he must claim that the defendant['s] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  *Id.*  (quoted source and internal quotation marks omitted).  The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (*citing Pearson v. Callahan*, 808 U.S. 2009, 129 S.Ct. 808  (2009)).

In his opposition memorandum, plaintiff aggregated and enumerated his claims against Holstead and Gay, as follows, 1) Holstead exceeded his jurisdictional boundary by going to the I-20 interchange to see if he could observe plaintiff; 2) Holstead and Gay used racial profiling to obtain probable cause to effect a traffic stop; 3) Holstead effected a traffic stop without probable cause; 4) Holstead falsely swore that he observed Jackson accelerate at an extremely high rate of speed; 5) Holstead changed his probable cause reason for stopping plaintiff; 6) Holstead and Gay purportedly confessed to issuing plaintiff a traffic ticket because of his mouth; and 7) Holstead and Gay again falsely swore that the reason they gave him a ticket was because of careless driving.  (Pl. Opp. Memo., pgs. 13-16).

At the outset, the court observes that many of plaintiff's allegations against Holstead and Gay stem from their purported violations of state criminal laws and procedures.  However, as stated previously, the violation of state law does not, "in and of itself," constitute a federal due process violation.  *See Ware, supra.*  Similarly, plaintiff seems to argue that because Holstead

25

went outside of his jurisdiction to observe Jackson, everything that occurred thereafter somehow was tainted.  However, there is no indication that Holstead relied on any extra-jurisdictional probable cause as grounds to stop Jackson.  Rather, Holstead only stopped Jackson after he observed Jackson commit a traffic infraction within his jurisdictional territory.

The court observes, in this regard, that "[a] person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied."  *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 2405 (2007) (citations and internal quotation marks omitted).  A traffic stop entails a seizure for purposes of the Fourth Amendment.  *Id*.; *see also, United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (stopping a vehicle and detaining its occupant(s) constitutes a seizure).  Traffic stops, whether supported by probable cause or a reasonable suspicion, are treated as *Terry* stops. *Brigham, supra*.  (citations omitted).

Under *Terry*, a law enforcement officer may temporarily detain a person when the "officer has a reasonable, articulable suspicion that a person has committed or is about to commit a crime."  *United States v. Chavez*, 281 F.3d 479, 485 (5th Cir. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868 (1968)).  Reasonable suspicion may be described as "'a particularized and objective basis' for suspecting the person stopped of criminal activity."  *Id*. (citing *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657 (1996)).  To satisfy the Fourth Amendment, the stopping officer must be able to "articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity."  *Id*. (citing *Illinois v. Wardlow*, 528 U.S. 119, 123-24, 120

26

S.Ct. 673 (2000)).[8]  The Fourth Amendment requires but a "minimal level of objective

justification for making the stop," and requires "a showing considerably less than preponderance

of the evidence."  *Id*. (citation omitted).  The validity of the stop is determined under "the totality

of the circumstances-the whole picture."  *Id*.  (citing *United States v. Sokolow*, 490 U.S. 1, 7-8,

109 S.Ct. 1581 (1989)).

Plaintiff contends that Holstead told him that he initially stopped him for speeding and/or

acceleration at an extremely high rate of speed, but then ultimately issued him a citation for

careless driving.  *See* Compl., ¶¶ 35-37.  Under Louisiana law, the careless operation statute

requires that "[a]ny person operating a motor vehicle on the public roads of this state shall drive

in a careful and prudent manner, so as not to endanger the life, limb, or property of any person."

La. R.S. 32:58 (in pertinent part).  Plaintiff contends that he never exceeded the posted speed

limit, and thus, Holstead did not have probable cause to stop him.  (Compl., ¶ 28).  Holstead

explained, however, that he stopped plaintiff because of the way that he had "very rapidly and

dangerously accelerated."  (Compl., ¶ 29).  Plaintiff replies that it was not unlawful for him to

accelerate rapidly, so long as his overall speed did not exceed the posted limit.

The court appreciates Jackson's argument that his rapid acceleration did not constitute the

offense of  "speeding."  However, it remained objectively reasonable for Holstead to believe that

Jackson's rapid acceleration potentially endangered others, and thus constituted the offense of

careless operation.  It also was objectively reasonable for Holstead to stop plaintiff for the

---

[8]  Reasonable suspicion may also be based on the collective knowledge of law
enforcement officers when there exists reliable communication between the officer supplying the
information and the officer acting on that information.  *United States v. Allison*, 616 F.2d 779,
782 (5th Cir. 1980).

offense of exhibition of speed:  "[n]o person shall drive any vehicle in any . . . exhibition of speed or acceleration . . . upon the public roads in this state . . ."  La. R.S. 32:65.

Before plaintiff can be heard to complain that the foregoing offenses were not the reason that Holstead provided for the stop, the court emphasizes that "an officer's subjective intentions have no impact on analyzing reasonable suspicion or probable cause because they are both considered to be based on an objective test."  *United States v. Lopez-Moreno*, 420 F.3d 420, 432 (5th Cir. 2005) (citation omitted).  Furthermore, the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."  *Devenpeck v. Alford*, 543 U.S. 146, 152-154, 125 S.Ct. 588, 593-594 (2004).  The offense establishing probable cause need not even be "closely related" to, or based on the same conduct that motivated the arresting officer.  *See, Devenpeck, supra*.

Thus, even if Holstead's subjective motivation for initiating the stop was his mistaken impression that Jackson was speeding, the fact that it was objectively reasonable to believe that Jackson was violating §§ 32:58 and/or 32:65 means that the traffic stop was not unconstitutional.  *Lopez-Moreno, supra*.[9]  The same objective reasonableness precludes plaintiff's claim that the stop was racially motivated, and that the officers issued the citation as retaliation for plaintiff's comments during the stop.  *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000) (subjective intent, motive, and even outright animus are irrelevant in determination of qualified immunity based upon probable cause) (citations omitted); *Lockett v. New Orleans City*, 607 F.3d 992 (5th

---

[9]  The undersigned further observes that unlike most § 1983 Fourth Amendment cases, the stop at issue here only resulted in a traffic summons, not an arrest.  Case law suggests that a mere summons does not constitute a seizure sufficient to support a § 1983 claim.  *See Gonzales v. Brazley*, 2009 WL 2411800 (E.D. La. Aug. 4, 2009) (and cases cited therein).

Cir. 2010) (no retaliation claim against officers for stacking traffic violations after plaintiff complained of race discrimination and harassment, where stop was objectively reasonable) (citation omitted).[10]

At various places in his complaint, plaintiff alleges that defendants Holstead, Gay, Randal Hermes, and Bill Davis committed perjury at his criminal trial.  However, witnesses – even those accused of lying under oath – are entitled to absolute immunity from damages under § 1983. *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108 (1983); *Freeze v. Griffith*, 849 F.2d 172, 174-75 (5th Cir. 1988).

In sum, plaintiff has failed to establish that defendants' conduct violated any federal constitutional protections enjoyed by plaintiff under current law.[11]  Accordingly, plaintiff has not overcome defendants' qualified immunity defense, and plaintiffs' claims against defendants in

---

[10]  The court also observes that to the extent that plaintiff attempts to assert a claim for discrimination under the Fourteenth Amendment's Equal Protection Clause, he must establish that he was treated differently from similarly situated individuals, and that the unequal treatment stemmed from discriminatory animus.  *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (citation omitted).  "Discriminatory purpose . . . implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group."  *Id*.  (citation and internal quotation marks omitted).  Here, although plaintiffs' complaint is replete with allegations of "conspiracy" and race-based animus and the like, these bare allegations are not supported by specific facts sufficient to elevate the complaint beyond the mere "formulaic recitation of the elements of a constitutional discrimination claim . . ." *Iqbal, supra* (citation and internal quotation marks omitted) (refusing to credit plaintiff's bare allegations that defendants "knew of, condoned, and willfully and maliciously agreed to subject [him] to harsh conditions of confinement . . .  solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.").  Accordingly, plaintiffs' bald assertions are not entitled to a presumption of truth, and do not suffice to state a claim.  *Id*.

[11]  Under these circumstances, the court need not reach the second prong of the qualified immunity analysis.  *See, Chavez, supra*.

their individual capacities must be dismissed.[12]

Plaintiff further contends that Randal Hermes and Bill Davis are liable because they ratified the actions of Holstead and Gay.  Supervisors, however, cannot be held liable on a theory of vicarious liability.  *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010) (citation omitted).  Nonetheless, supervisors can be held liable when the "enforcement of a policy or practice results in a deprivation of federally protected rights."  *Bustos, supra* (citation omitted).  However, when, as here, plaintiffs have failed to allege or establish a constitutional violation by the individuals directly involved in the challenged activity, they cannot show that any supervisor implemented a policy or custom that violated their constitutional rights.  *Bustos*, 599 F.3d at 468.

**b)**   **Louisiana Tech University and Louisiana Tech University Police Department**

A party's invocation of Eleventh Amendment immunity is analyzed as a challenge to the federal court's exercise of federal subject matter jurisdiction.  *Mahogany v. Louisiana State Supreme Court*, 262 Fed. Appx. 636 (5th Cir. Jan. 25, 2008) (citations omitted).  It is well settled that

> [t]he Eleventh Amendment to the United States Constitution bars suits in federal court by citizens of a state against their own state or a state agency or department. Claims under federal statutes do not override the Eleventh Amendment bar unless there is a clear showing of congressional intent to abrogate the bar. Section 1983 does not override the Eleventh Amendment bar.

*Darlak v. Bobear*,  814 F.2d 1055, 1059 (5th Cir. 1987) (citation omitted).

Suits against state officials and employees of state entities in their official capacity also transgress the Eleventh Amendment.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58,

---

[12]  Plaintiff's claims against defendants in their official capacities are treated as claims against the governmental entity that employs them.  *See, Brooks v. George County, MS*, 84 F.3d 157, 165 (5th Cir. 1996).  These claims are addressed below.

71, 109 S.Ct. 2304, 1212 (1989); and *Thomas v. Texas Dept. of Family and Protective  Thomas v. Texas Dept. of Family and Protective Services*, 2011 WL 2161909 (5th Cir. June 2, 2011) (unpubl.) (citations omitted).

Louisiana has refused to waive its 11th Amendment immunity from suit in federal court. La. R.S. 13:5106; *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991). Moreover, Louisiana Tech University is a public university governed by the Board of Supervisors for the University of Louisiana System. *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 449 (5th Cir. 2005). The Fifth Circuit has recognized that other universities in this same state system are entitled to Eleventh Amendment immunity. *See Laxey v. Louisiana Board of Trustees*, 22 F.3d 621 (5th Cir. 1994) (according immunity to the former University of Southwestern Louisiana); *Richardson v. Southern University*, 118 F.3d 450, 456 (5th Cir. 1997) (recognizing that Southern University and its Board of Supervisors are arms of the State of Louisiana entitled to Eleventh Amendment immunity).

When, as here, a challenge is made to the propriety of the court's exercise of jurisdiction, the burden rests upon the party asserting jurisdiction in the federal court to plead facts establishing  jurisdiction and to establish that jurisdiction is proper under the law. *Applewhite v. Metro Aviation, Inc.*, 875 F.2d 491, 494 (5th Cir. 1989) (citation omitted). Plaintiff has not met his burden. Accordingly, the court finds that plaintiffs' claims against Louisiana Tech University and Louisiana Tech University Police Department are barred by the Eleventh Amendment and subject to dismissal for lack of subject matter jurisdiction.

### IV.    Remaining State Law Claims

When, as recommended here, all claims which conferred federal subject matter

jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367.  In fact, this is the general rule.  *Priester v. Lowndes County*,  354 F.3d 414, 425 (5th Cir. 2004) (citation omitted).  The undersigned further observes that plaintiff's allegations that defendants violated the Louisiana Constitution and state procedural and criminal rules remain within the particular province and expertise of the state courts.  In addition, overall, defendants' motions did not attempt to unravel the maze of state laws and rules that plaintiff contends defendants violated.  Accordingly, the twin interests of comity and efficiency dictate that any state law claims be dismissed without prejudice.[13]

### Conclusion

For the above-assigned reasons,

**IT IS RECOMMENDED** that the motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 6], filed by defendants, Ruston City Prosecutor W. Kyle Green and the City of Ruston be **GRANTED**, and that judgment be entered in favor of said defendants, **DISMISSING, with prejudice**, plaintiff's claims arising under the laws and Constitution of the United States.  Fed.R.Civ.P. 12(b)(6).

**IT IS FURTHER RECOMMENDED** that the motion to dismiss for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted [doc. # 7], filed by defendant, Danny W. Tatum, Ruston City Court Judge, be **GRANTED IN PART**, and that judgment be entered in favor of said defendant, **DISMISSING, with prejudice**, plaintiff's claims arising under the laws and Constitution of the United States.  Fed.R.Civ.P. 12(b)(6).

---

[13]  The limitations period is tolled for a minimum of 30 days after dismissal.  *See*, 28 U.S.C. § 1367(d).

**IT IS FURTHER RECOMMENDED** that the motion to dismiss for lack of subject matter jurisdiction [doc. # 7] otherwise be **DENIED**, as moot.

**IT IS FURTHER RECOMMENDED** that the motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 8], filed by defendant, Judge Danny W. Tatum, on behalf of defendant, the Ruston City Court be **GRANTED**, and that defendant, the Ruston City Court, be **DISMISSED** from the case.

**IT IS FURTHER RECOMMENDED** that the motion to dismiss for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted [doc. # 9], filed by defendants, Wanda Neeles, Brenda Gafton, and Linda Hanes, be **GRANTED IN PART**, and that judgment be entered in favor of said defendants, **DISMISSING, with prejudice**, plaintiff's claims arising under the laws and Constitution of the United States.  Fed.R.Civ.P. 12(b)(6).

**IT IS FURTHER RECOMMENDED** that the motion to dismiss for lack of subject matter jurisdiction [doc. # 9] otherwise be **DENIED**, as moot.

**IT IS FURTHER RECOMMENDED** that the motion to dismiss for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted, [doc. # 29],be **GRANTED**, and that judgment be entered in favor of defendants:  1) Louisiana Tech University and Louisiana Tech University Police Department, **DISMISSING, without prejudice**, plaintiff's claims against them for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1); and 2) Louisiana Tech Chief of Police Randal Hermes, Louisiana Tech Assistant Chief of Police Bill Davis, and Louisiana Tech Police Officers Randy Gay and Tim Holstead, **DISMISSING, with prejudice**, plaintiff's claims arising under the laws and Constitution of the

33

United States.  Fed.R.Civ.P. 12(b)(6).

**IT IS FURTHER RECOMMENDED** that any remaining claims arising under the laws and Constitution of the State of Louisiana be **DISMISSED, without prejudice**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 22nd day of November 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

34